M. D. WARREN, Appellant,

v.

Inez SWANZY et vir et al., Appellees.

No. 6506.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 6, 1962.

Rehearing Denied Oct. 10, 1962.

Second Motion for Rehearing Denied
Oct. 31, 1962.

McDaniel, Hunt & Fairchild, Bill Griffin, Jr., Center, for appellant.

Dudley Davis, Center, Charles F. Wellborn, Gladewater, for appellees.

McNEILL, Justice.

This is a trespass to try title action. It was instituted by appellee, Mrs. Inez Swanzy and children, against appellant, M. D. Warren and heirs of one J. L. Defee and wife. Herein however appellees will be designated as plaintiffs and appellant Warren as defendant.

The action involves title to a tract of 70 acres, more or less, in the J. L. Defee Survey of Shelby County, Texas. In order to understand the questions involved, a sketch of the area is inserted here.

The land described in plaintiffs' petition is the area bounded by the letters "A", "B", "C", "D", and "F" and constitutes the northern part of the Defee Survey. In addition to the formal allegations in trespass to try title, plaintiffs pleaded the benefit of the 5, 10, and 25 years statutes of limitation as well. They also alleged that they and their predecessor in interest, T. Wood Smith, went into possession of said land and openly, notoriously and peaceably held adverse possession of said land continuously cultivating, using and enjoying the same and paying all taxes thereon until they were dispossessed by the defendants; and that defendant Warren took possession and unlawfully sold gravel from said land to plaintiffs' damage in the sum of $297.80. Personal service of citation was had upon the defendant Warren and one of the Defee descendants, but all other defendants were cited by publication. Defendant Warren answered the suit and asserted pleas of not guilty and the statutes of limitation of 3, 5, 10, and 25 years; and asserted a cross action for damages for removal of gravel from the land against plaintiffs. The other defendant personally served defaulted. The court appointed an attorney to represent the defendants cited by publication and a plea of not guilty was filed by them.

The cause was tried to a jury who answered issues to the effect that the boundary line between the land claimed by plaintiffs and that claimed by defendant is the line designated as "A"—"B" on the above sketch. The jury also found that plaintiffs had established adverse possession to the premises under the 5, 10 and 25 years statutes of limitation. Judgment upon this verdict was rendered for plaintiffs for the land and defendant Warren appeals.

Defendant's brief contains 54 points of error. We think, however, the controlling questions may be summarized in a much more condensed manner. Upon the trial in the district court and in his brief here defendant disclaimed any interest in that portion of the land described in plaintiffs' petition lying to the north of line "A"—

"C". Therefore, the actual controversy is the ownership of the triangle of about 30 acres lying within the lines marked by "A", "B", and "C". The parties made demands upon each other for abstracts of title. Included in plaintiffs' abstract of title were the following instruments: Patent from the State to J. L. Defee for the Defee Survey containing 158 acres; deed from J. L. Defee and wife and two children, C. D. Defee and W. R. Defee, dated September 24, 1900 to George E. Donalson. The abstract also described a deed dated about October 9, 1902 from George E. Donalson to John Flowers, which contained two vendor's lien notes to secure the payment of purchase price of said land, and stated that Donalson transferred said vendor's lien notes to T. Wood Smith but that said deed and transfer were never recorded and were lost, misplaced or destroyed. This abstract also included a judgment of the district court of Shelby County dated September 2, 1913, in Cause No. 2772, styled T. Wood Smith vs. John Flowers, recorded in Vol. 3, p. 51, of the Minutes of said court; order of sale on said judgment, notice of sale and sheriff's return on said order of sale; a sheriff's deed dated November 5, 1913 executed by the sheriff of said county to T. Wood Smith under said order of sale, which deed is recorded in Vol. 78, p. 347, Deed Records of said county.

Based upon both his motion for instructed verdict and motion notwithstanding the verdict, defendant vigorously urges that plaintiffs have failed to show record title to any part of the "A", "B", "C" triangle area. When the above listed deed from J. L. Defee, et al., to Donalson was offered by plaintiffs, objection was made that it was void because it failed to describe any of the land involved. The description of this deed is:

"* * * situated in Shelby County Texas and being a part of the Headright of J. L. Defee Preemption

"BEGINNING at the S.E. corner of C. M. Belsha and J. S. Griffins line—

"THENCE N W 1200 vrs to Pine N 40 E 6 vrs DO N 65 W 7 Vrs X—

"THENCE West 125 yds Cor Black Jack marked X—

"THENCE with Mosses W boundary 660 yds to black gum on branch Mkd X—

"THENCE up said branch 75 yds—

"THENCE S E 525 Yds to J. S. Griffiths N W boundary line to cor B–ach and Pine 4 In dia X the beginning containing 70 acres more or less * * *."

Defendant says that the calls for course in the first and second calls would describe land not within the Defee Survey, and the calls are so inaccurate they cannot be identified on the ground. However, the evidence indicates that by starting at the southeast corner of the C. M. Belcher Survey on J. S. Griffin's line and going *south*westerly along the northerly line of the Defee Survey at 1200 varas one would reach corner "D" of the Defee; and that going from thence *southeasterly* along the westerly line of the Defee Survey for the next call a distance of 135 varas or 125 yards the corner marked by a black oak and two pines would be reached; thence proceeding north 79 degrees east a distance of 660 yards a black gum on a branch, as called for in the third call; thence going up said branch 75 yards two willows at a corner was found; and proceeding from that point south 89 degrees east 525 yards is the corner on the J. S. Griffin Survey line marked by a beech and pine. Though the description in the deed is most inept, it undoubtedly was the intention of the grantors to convey property in the Defee Survey, and when applied to the known corners, part of which were marked by bearing trees, the deed should be upheld. Stafford v. King, 30 Tex. 257; Adams v. Grogan-Cochran Lumber Co., Tex.Civ. App., 181 S.W.2d 582; Rhoden v. Bergman, Tex.Civ.App., 75 S.W.2d 993.

▮ Plaintiffs also offered in evidence said sheriff's deed to T. Wood Smith based upon the judgment of foreclosure on the 2

vendor's lien notes and order of sale issued out of the district court of Shelby County. Defendant objected to the admission of this deed on the ground that it did not describe or include any part of the land really in contest—the triangle "A", "B", "C". It was shown that the pleadings in the case of T. Wood Smith vs. John Flowers were missing and could not be found but the judgment and order of sale are in evidence. The description in the judgment is as follows:

 * * * "a part of the J.L. Defee H.*N*. pre-emption survey,

"BEGINNING at the S.E. cor. of C. M. Belchers Sur. an J.S. Griffins W bdy. line at a stake;

"THENCE S 70 W. with the E. bdy line of said J.L. Defee sur. 1200 *yds* to a stake in the road leading from Neuville to Duff from which a pine brs. N 40 E 6 vrs. another brs N 65 W 7 vrs. both *mks*. X this being the N.W. cor. of the said Defee Sur.

"THENCE S 20 E. with the W. bdy, line of said Sur. 125 yds. to a stake on the W. of the Neuville and Duff road, a large black oak and two pines *mked* X

"THENCE about N. 79 E. at 320 yds. cross a *spruy* branch at 660 yds. a stake on a branch, witness tree—a black gum mkd X

"THENCE up said branch S 11 E 75 yds. to a stake two large willows both mkd X

"THENCE N about 35 E. 525 yds, to the place of beginning, containing 70 acres of land."

The description in the order of sale is identical. The description in the sheriff's deed is the same except in the last call. There this call reads: "Thence *about* 35 E. 525 yds, to the place of beginning, containing 70 acres of land." It is apparent that the inaccuracy in this call of the sheriff's deed should be controlled by the de-

scription in the judgment and order of sale. Testimony of Meeks, a surveyor, was to the effect that the course "N. 35 east" would be within 2 degrees of corner "C", the point of beginning. But the distance of 525 yards was considerably short and plaintiffs attempted to show that on account of this inaccuracy, the amount of acreage called for, and because of the reputation of the ownership in the community of the triangular tract of land as being that of T. Wood Smith, parol testimony was admissible to show that the sheriff's deed should include the triangular tract. This would require adding two calls, one from "A" to "B" and one from "B" to "C" to this deed. The evidence does not justify this. The last call in the deed, as modified by the judgment and order of sale, "thence N about 35 east to the place of beginning" is clear and unambiguous. The place of beginning is well known as an established corner, recognized as such by all parties and witnesses. The fact that the distance, 525 yards, falls considerably short of this corner is not significant. The call in a deed for distance is the weakest of all calls. Stafford v. King, 30 Tex. 257; Matador Land & Cattle Co. v. Cassidy—South Western Comm. Co., Tex.Civ.App., 207 S.W. 430. Distance and quantity called for must yield to well established corners. Wright v. Dabbs, Tex.Civ.App., 220 S.W.2d 681; Ostrom v. Jackson, Tex.Civ.App., 127 S.W. 2d 987. Plaintiffs argue, in effect, that since the Defee deed conveys the disputed triangle area to Donalson, it should be presumed that Donalson sold the same tract to John Flowers. They state that there is no evidence to indicate otherwise. But the burden to show he sold all of the same land (at least the triangle area) was upon plaintiffs. There is no presumption that a grantee in a deed will, when he sells, convey all of the land he received as grantee. We, therefore, hold that the sheriff's deed did not include the triangle involved. Magnolia Petroleum Co. v. Jones, 138 Tex. 67, 158 S.W.2d 548; McKee v. Stewart, 139 Tex. 360, 162 S.W.2d 948; Luckett v. Scruggs, 73 Tex. 519, 11 S.W. 529; Spearman v. Mims, Tex.Civ.App., 207 S.W. 573.

Plaintiffs assert that regardless of their record title, they have shown limitation title under the 10-year statute. We have read the record carefully and cannot sustain plaintiffs' position. Although it does not materially affect our action herein, we think attention should be called to the following matter in the record. Much of the testimony is wholly unintelligible to us. Maps were used from which witnesses testified. In identifying fences, roads, cultivated plots, old house locations, etc., on these maps they would point to the locality but the locality was no way marked so that this testimony can be followed by us. Their testimony is well exemplified in the following quotation:

> "A. There's a fence that comes off down Griffith line here, C.M. Belcher 160 acres. It starts about here and whole 160 acres—goes back *in there*, comes across here down this J. S. Griffith line, down to right *along here* and then it turns *this way*. How—it turs *that* way. Now it went on *this*—over here to *this road*. Now fence *comes* on *down here*. *This* was fenced or was fenced. All fences about down. Now that fence from right *here* to right *here* and then on around *this* tract." (Emphasis added)

This testimony has no meaning for us. Ainsworth v. Texas & N. O. R.R. Co., Tex. Civ.App., 288 S.W. 481. However, we conclude that the evidence clearly shows that there was no such continuous visible or actual possession or use of the premises as is required. From the time of the sale of the premises by the Defees in 1900 there has been no one living on the land. The most that can be said is that every five or ten years some timber was sold off of it. Whether it was sold off the entire tract described in plaintiffs' petition or the triangle involved, the record is not clear. Testimony also shows that there was temporary use of the premises in the disputed area in

1953 when much gravel was sold off the land by Mrs. Swanzy, and in 1958 timber in the disputed area was cut by L. A. Runnels who bought it from Mrs. Swanzy. There were some oil leases made and pipeline easements granted by Mrs. Swanzy but the instruments followed the description in the sheriff's deed above described, and no testimony shows whether the pipelines ran across the triangle involved.

 cutting of timber is not sufficient possession of land to mature limitation. Davis v. George, Tex.Civ.App., 136 S.W. 505; Meredith v. Mitchell, Tex.Civ. App., 167 S.W. 189; W. T. Carter & Brother v. Ruth, Tex.Civ.App., 275 S.W.2d 126. Although there is testimony in the record that for practical purposes the land was only useful in growing timber or removing gravel therefrom; as said by this court in the last cited case (p. 131):

> "We are aware that the use which one in possession is required to make of land in order to perfect title by limitation is only such use as the land is adapted to have made of it. Nona Mills Co. v. Wright, 101 Tex. 14, 102 S.W. 1118; Moran v. Moseley, [Tex.] Civ.App., 164 S.W. 1093, 1094. However, there must be continuous and uninterrupted adverse possession for the full statutory period. Hardy v. Bumpstead, Tex.Com.App., 41 S.W.2d 226, [76 A.L.R. 1488]; Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265; Pendleton v. Snyder, 5 Tex.Civ.App. 427, 24 S.W. 363, 364. And in order to be adverse, the possession must be exclusive. Richards v. Smith, 67 Tex. 610, 4 S.W. 571. The evidence in this case is insufficient as a matter of law to meet these standards and requirements of the law."

Because we hold the sheriff's deed did not include the disputed area, and plaintiffs did not have that actual possession continuously of the land required under the 10-year statute, plaintiffs may not recover on their record title nor upon the various statutes of limitation pleaded.

[9] reasons since plaintiffs claimed under the record title established by the foreclosure proceedings, and since we have held that the sheriff's deed thereunder does not include the triangle, that plaintiffs are foreclosed from asserting any other right of title to the triangular tract. This upon the theory that judgment in the foreclosure suit was res adjudicata as to plaintiffs and if not res adjudicata the judgment creates an estoppel against plaintiffs. Regardless of other answers that perhaps may be made to this, it is sufficient to say that since defendant does not claim through or under this foreclosure proceeding, was not a party thereto but is a stranger to plaintiffs' title and claim, these pleas are without merit. Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490.

[10] assert that the judgment should be upheld on the basis of their prior possession. There was evidence that for a continuous period of 47 years, from 1913 to 1958, plaintiffs and their predecessor in interest T. Wood Smith, had claimed the entire tract including the triangle. No testimony contradicts this, nor was there any contrary claims asserted thereto during this period. Plaintiffs and their predecessor Smith paid all taxes currently each year for this period on 70 acres in the Defee Survey. They sold growing timber therefrom on several occasions and a considerable amount of gravel in 1953. In addition to that, as has been indicated above, various instruments, including oil leases, and pipeline right of ways, were granted over the years. However, these instruments used the sheriff's deed as a basis for their description, and the evidence fails to show whether any pipelines were actually laid across the disputed area. On the whole, though, we think that for the period of 47 years plaintiffs and their predecessor exercised dominion over the land in question. The evidence without contradiction shows that Mrs. Swanzy sold timber on the entire

tract, including the triangle, in the year 1958 to one L. A. Runnels. Mr. Runnels testified that he cut timber off the triangular area in the fall of 1958, as well as from other parts of plaintiffs' tract, and that he discussed the boundary line during this time with defendant, who stated that if timber was not cut south of a line practically coincident with line "A"—"B" he would have no objection. Notwithstanding this, during the latter time of the timber cutting defendant instructed Runnels' driver not to remove some of the trees that had been cut down in the southern portion of the disputed area. This appears to have precipitated the present controversy.

■ Defendant owns the land south of line "A"—"B". His claim to the disputed area is under a deed from Curtis Jasper and wife, dated May 22, 1942. We have attempted to follow the description in this deed but have been unable to do so. The burden is on the person claiming under a deed to identify the land described. Duren v. Strong, 53 Tex. 379. This was not done. A call in the deed reads:

> "THENCE in a northerly direction with said branch to Charlie Defee fence on the East side of the Charlie Defee place, continuing Northward with the outside of said fence to the N.B. line of the J.L. Defee Survey corner;"

and on this defendant insists that the land included runs to point "C" on the map, being the N. E. corner of the Defee Survey. However, the next call in the deed reads: "Thence west with said N.B. line to where it crosses the next branch corner two willows marked 'X'." This call is the line "A"—"B" on the above map. It is apparent a discrepancy exists. In any event, defendant did not attempt to locate other calls and it is impossible from the record to follow them upon the ground. Defendant obtained the Curtis Jasper deed and recorded it on May 22, 1942. A person is presumed to know the extent of the bound-

aries of his land. McCabe v. Moore, Tex. Civ.App., 38 S.W.2d 641. Nevertheless defendant did not assert any claim to the disputed area for 16 years after obtaining the deed from Curtis Jasper. During the 40's and 50's he wrote Mrs. Swanzy several letters assuring her that her 70 acres were being looked after by him. It was not until about December 1, 1958 he first asserted claim thereto. This was after much of the timber sold to Runnels in the disputed tract had been cut, and much after Mrs. Swanzy had sold considerable gravel off of the triangle, about 1953. And it was apparently not until after the surveyor Meeks in the fall of 1958, had run the boundary lines of the land for Mrs. Swanzy and discovered the discrepancy in the description of the sheriff's deed.

■ In view of the above facts, we think prior possession was established as a matter of law in favor of plaintiffs. Plaintiffs having placed Runnels in possession of the premises in the fall of 1958 for the purpose of cutting timber and removing same from the premises, his possession is sufficient possession in behalf of plaintiffs to bar intrusion upon the premises by defendant. Undoubtedly the purchaser, as is Runnels, had the right of possession of the premises for the purpose of cutting and removing the trees. 54 C.J.S. Logs and Logging § 20, p. 712. Such an operation usually extends over several weeks or months. The right of possession for the purpose stated is derived from the seller of the timber. The seller no doubt must recognize and respect the purchaser's rights in the contract but reciprocally is entitled to claim the benefit of purchaser's entry and occupancy. Houston Oil Co. of Texas v. Moss, 155 Tex. 157, 284 S.W.2d 131 (133, 134). See, also, Teagarden v. Patten, 48 Tex.Civ.App. 571, 107 S.W. 909. Possession and use of the premises by Runnels was a peaceable one inuring to the benefit of the plaintiffs and, when considered, in connection with plaintiffs' other acts of ownership and dominion over the property

in controversy, is sufficient to sustain this suit against an intruder as we hold defendant to be. Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S.W.2d 410; Hunt v. Hunt, Tex.Civ.App., 95 S.W.2d 724; Stuart v. Harper, Tex.Civ.App., 143 S.W. 712; Teagarden v. Patten, supra; Dinwitty v. McElmore, Tex.Civ.App., 291 S.W.2d 448 (451). Appropriate to the present controversy is the following language of Chief Justice Dixon in the case last cited: "Appellees' claim of title, weak though it may be, is definitely stronger than the claim of appellant."

It was said in House v. Reavis, 89 Tex. 626, 35 S.W. 1063 at page 1065:

"The presumption of title in the possessor is indulged in favor of quieting the land titles of the country, and to support the possession and right of those who, under a claim of right, hold such possession, but whose chain of title is not complete in all of its parts. If the position taken in this case be established as the law, then the object and purpose of such a presumption which has so long prevailed in common-law courts would be defeated, and the title of every possessor of real estate whose chain of title was not perfect would be placed at the mercy of those who, either by force, fraud or strategy, could secure the possession, and thus place the actual and rightful possessor upon proof of a regular chain of title from the government, and, in case of failure to do so, could defeat his right by simply showing that the title had passed out of the state without showing any claim of title in himself."

We are convinced from the record before us that it was only after defendant's discovery of the weakness in plaintiffs' record title that the present controversy started. Even so, on the trial below he stated that he recognized Mrs. Swanzy had a "limited" ownership to the triangle.

The judgment below is affirmed.

## ON MOTION FOR REHEARING

■ Defendant's earnest motion has been carefully studied. In it he urges we erred in affirming the judgment for several reasons. These will be briefly mentioned. The first is because the affirmance was not upon the basis of the jury's findings. The transcript reflects that plaintiffs filed motion for judgment upon the basis of the verdict. The court granted this motion and rendered judgment for plaintiffs. In reaching the conclusion to affirm this judgment, we believed the findings of the jury were immaterial. In addition to detailed allegations of adverse possession in paragraphs 3 through 7 of the First Amended Original Petition, it was alleged in the latter part of Par. 8 following, facts which would support prior possession and since prior possession was established as a matter of law by plaintiffs, the judgment below was upheld. Defendant says because the court submitted the issue of prior possession conditionally upon findings that no ground of adverse possession existed in favor of plaintiffs, plaintiffs waived the issue of prior possession. This, we think, is the rule as to an issue of disputed fact. But this does not apply to one conclusively established. Rule 279, Texas Rules of Civil Procedure; Goodwin v. Southtex Land Sales, Tex.Civ.App., 243 S.W.2d 721.

■ Defendant asserts that because plaintiffs attempted to prove their record title back to the sovereignty of the soil, and having failed, they cannot rely upon prior possession. If the record title was their only foundation for recovery we would sustain defendant. But, besides the formal allegations of Trespass to try title, and pleas of adverse possession, separate allegations supporting the theory of prior possession were asserted. Where plaintiff relies on more than one ground of recovery, failure to connect his title with the title out of the state is not fatal. Buvens v. Brown (Tex.Com.App.), 290 S.W. 1086 (1089); Dean v. Grogan-Cochran Lumber Co., Tex.Civ.App., 58 S.W.2d 552.

█ Defendant asserts that in attempting to prove their record title, plaintiffs showed this title to the land was in George Donalson. It is reasoned from this that plaintiffs recognized title as being in Donalson and so doing cannot recover, citing this court's holding in Cuniff v. Bernard Corp., Tex.Civ.App., 94 S.W.2d 577. Plaintiffs did show record title to this land was in Donalson. But it cannot be said from that that plaintiffs recognized Donalson's ownership. Since 1913, as pointed out in the original opinion, plaintiffs and their predecessor, T. W. Smith, who died in 1936, have exercised dominion over the land and have claimed it as their own. No contrary claim was asserted until defendant's claim was made. It was said in Magee v. Paul, 110 Tex. 470, 221 S.W. 254, at p. 256:

"Since it is not consistent with human experience for one really owning property of value to assert no claim thereto, but to acquiesce for a long period of time in an unfounded, hostile claim, the rule is sound which permits the inference that an apparent owner has parted with his title from evidence, first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of nonclaim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim."

It is presumed that plaintiffs having prior possession have acquired outstanding title of third party. Humble Oil & Refining Co. v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218 (W.R.).

The motion for rehearing is overruled.